## NATHAN FOSS *et al versus* ANTONIO CRISP.

Where a deed from V to P, conveying several parcels of land described by metes and bounds, contained the clause, " meaning and intending hereby to convey all the real estate which I derived under the deeds recorded in Suffolk registry of deeds," (citing several deeds by book and leaf,) " to all which deeds reference is to be had," it was *held*, that a parcel of land conveyed to V by a deed thus referred to, and no otherwise described in the deed from V to P than by such reference, passed by the deed from V to P.

An alien husband who makes the preliminary declaration of his intention to become a citizen before the death of his wife, and completes his naturalization after her death, is not entitled to her land as tenant by the curtesy.

WRIT of entry.

On a case stated, it appears that the demandants, Sarah Anne Foss, wife of Nathan Foss, Marianne Nicholson, Elizabeth, Daniel, Thomas, Samuel and John Varney, are the children and heirs of Joseph Schrevarney, alias Varney, and his wife Sarah. Joseph Varney died in 1826, and in 1829 his widow was married to the tenant. They had issue one son, Antonio Crisp junior, who is now living. Sarah Crisp died in June 1836.

The tenant is a native of Spain. He made his primary declaration for the purpose of being naturalized, in 1829, and in November 1836, subsequently to the death of his wife Sarah, he was duly naturalized.

On April 8, 1822, Joseph Varney, who was then seised in fee of all the parcels of land demanded, made a deed to S. D. Parker, by which he conveyed to him in fee, certain parcels of real estate, describing three parcels by metes and bounds, and then proceeding as follows : " meaning and intending hereby to convey all the real estate which I derived under the deeds recorded in Suffolk registry of deeds, lib. 253, fol. 113 and 114, lib. 255, fol. 240, lib. 256, fol. 220, lib. 244, fol. 293, lib. 264, fol. 170, lib. 264, fol. 171, lib. 272, fol. 138, to all which deeds reference is to be had."

The deed referred to in lib. 264, fol. 170, is one from Elisha D. Fuller and wife to Joseph Schrevarney, dated November 4, 1819, conveying certain real estate therein described, which is not included in the descriptions of the parcels conveyed to Parker by metes and bounds, though the deed is referred to as above mentioned.

Foss
v.
Crisp.

The lands described in the deeds of Varney to Parker, and of Fuller and wife to Varney, are the lands claimed in this suit.

Parker, on April 8, 1822, made a deed to Sarah Varney, by which he conveyed to her in fee, certain parcels of real estate, following Varney's deed to Parker in the descriptions by metes and bounds, and then proceeding as follows ; " mean ing and intending hereby to convey all the real estate convey ed this day to me by said Joseph Varney, otherwise called Schrevarney, by his deed of even date herewith, to which ref erence is to be had, and also to all the deeds therein referred to."

The demandants claim as heirs of Sarah Varney, after-wards Sarah Crisp, seven undivided eighth parts of the lands described in the deed of Joseph Varney to Parker, and also claim the whole of the land conveyed by Fuller and wife to Joseph Varney, as heirs to Joseph Varney their father, on the ground that no part thereof passed by his deed to Parker. But in case the land conveyed by Fuller and wife passed by the deed of Varney to Parker, and by the deed of Parker to Sarah Varney, then they claim seven eighths of this land as heirs of their mother.

The tenant claims to hold the whole of the demanded prem-ses as tenant by the curtesy. This claim is contested, on the ground that he was an alien and not naturalized at the time of Sarah Crisp's death.

March 20th

*Sewall*, for the demandants, cited to the point that the land conveyed by the deed of Fuller and wife to Varney, did not pass by the deeds of Varney to Parker and Parker to Sarah Varney, *Worthington* v. *Hylyer*, 4 Mass. R. 196 ; *Moore* v. *Magrath*, Cowp. 9 ; *Lyman* v. *Clark*, 9 Mass. R. 235 ; *Meyrick* v. *Meyrick*, 2 Crompt. & Jerv. 223 ; *Att. Gen.* v. *Downshire*, 5 Price, 269 ; that an alien may take by purchase, but not by act of law, *Collingwood* v. *Pace*, 1 Ventr. 417 ; *Wilbur* v. *Tobey*, 16 Pick. 177 ; *St.* 1812, c. 93, § 1 ; Re-vised Stat. c. 60, § 14 ; and that the completion of the ten-ant's naturalization after the death of his wife, could not ope-rate back by relation to the preliminary declaration, so as to devest the estate which at her death vested in her children,

*M'Daniel* v. *Richards*, 1 M'Cord, 187 ; *Richards* v. *M'-Daniel*, 2 Nott & M'Cord, 351 ; *Fairfax's Devisee* v. *Hunter's Lessee*, 7 Cranch, 603 ; *Orr* v. *Hodgson*, 4 Wheat. 453 ; *Craw* v. *Ramsey*, Vaugh. 285 ; Act of Congress, March 26th, 1804, *c.* 47, § 2 ; Co. Lit. 8*a*, 33*a*, 310*b* ; *Menville's case*, 13 Co. 23 ; Bro. Abr. *Eschete*, *pl.* 27 ; *Fish* v. *Klein*, 2 Meriv. 431 ; *Calvin's case*, 7 Co. 25*a* ; *Blight's Lessee* v. *Rochester*, 7 Wheat. 535 ; *Collingwood* v. *Pace*, Ventr. 428 ; *S. C.* Judgments of Orl. Bridgman, 457 ; *Mick* v. *Mick*, 10 Wendell, 379.

S. D. *Parker*, for the tenant, cited in regard to the deed from Varney to Parker, *Lunt* v. *Holland*, 14 Mass. R. 149 ; *Grant* v. *Chase*, 17 Mass. R. 443 ; *Allen* v. *Bates*, 6 Pick. 460. By the Revised Stat. *c.* 60, § 17, the common law disability of alienage is removed, in the case of tenants by the curtesy. *Commonwealth* v. *Cooley*, 10 Pick. 39 ; *Nichols v. Squire*, 5 Pick. 168 ; 11 Legal Observer, 192 ; 1 American Jurist, 87, 88. The tenant, by his preliminary declaration, had an inchoate right to the land as tenant by the curtesy, which became absolute, when his naturalization was completed. Act of Congress, March 26, 1804, *c.* 47, § 2.

PUTNAM J. delivered the opinion of the Court. The first *March 26th* question to be considered is, whether the premises which were conveyed by Fuller and wife to Joseph Varney, were included in the deed of Joseph Varney to Parker.

The objection is, that in the deed to Parker, the grantor describes six of the estates by metes and bounds, and does not describe the seventh (the estate which Fuller and wife conveyed to Varney) by metes and bounds, but only by reference to the same deed as recorded in lib. 264, fol. 170, of the registry of deeds, of this county.

If the grantor had not taken the trouble to describe particularly the metes and bounds of the six several parcels of land, but had referred to a record of the same estates as containing a true description of the premises intended to be conveyed, such a conveyance would have been good, and the description contained in the records would by law be deemed to be incorporated and made a part of the conveyance. It is a question of intent. The grantor describes some of the par

*Foss*
*v.*
*Crisp.*

Foss
v.
Crisp.

cels of land particularly, and refers to the records also. But the reference was unnecessary as to those. There was a double description as to those He omitted the particular description of the metes and bounds of the Fuller lot, but he referred to the records for the certainty of the description of that part of the granted premises, and the reference is to be considered as included in the conveyance. We think this mode of conveyancing is not expedient ; for in case of the destruction of the records, the grantee might be put to great difficulty in proving his title. It is always better and more safe to describe the estate particularly in the conveyance, and not merely by reference to the records.

In the case before us, we are all satisfied that the Fuller estate was conveyed by Joseph Varney to Parker, with the other six parcels of estate contained in that deed. And it is agreed that Parker conveyed the whole of the same to Sarah Varney. Upon her decease the same descended to her children and heirs.

It is found in the case, that Sarah, after the death of her husband Varney, married Antonio Crisp, the tenant, by whom she had one child, Antonio Crisp junior, now living : and that Antonio Crisp was an alien, a native of Spain, and that he made his primary declaration of an intent to become a citizen of the United States, in the lifetime of Sarah his wife, and was in fact naturalized after her death.

And the question made for him is, whether or not he is entitled to hold the premises as a tenant thereof by the curtesy.

In the case of *Wilbur* v. *Tobey*, 16 Pick. 179, the Chief Justice, for the whole Court, stated the law to be without doubt, " that an alien can take real estate, by deed or devise, or other act of purchase, but cannot *hold* against the Commonwealth ; he therefore takes a defeasible estate, good against all except the Commonwealth, and good against them, until they institute proceedings, and obtain a judgment by inquest of office. But an alien cannot take by act of law, as descent, because the law will be deemed to do nothing in vain, and therefore it will not cast the descent upon one who cannot by law hold the estate."

The doctrine laid down by the Chief Justice is maintained

Foss
*v.*
Crisp

by all the books which treat of the subject. Indeed the counsel for the tenant does not deny the general doctrine of the common law touching alienage, but courageously contends that it has been repealed by our own statutes, and that the tenant is entitled to take and hold the premises demanded, as a tenant by the curtesy.

He contends that by the Revised Stat. *c.* 60, § 17, the tenant is clearly entitled. The provision is, " when any man and his wife shall be seised, in her right of any estate of inheritance in lands, and shall have issue born alive, which might inherit the same, the husband shall, on the death of his wife, hold the lands for his life as tenant thereof by the curtesy." That was a revision of the *St.* 1783, *c.* 36, § 5, which provided, " that when a man and his wife shall be seised of lands &c., in her right in fee, and issue shall be born alive of the body of such wife, that may inherit the same, and such wife shall die, the husband shall have and hold such estate during his natural life, as tenant by the curtesy.'

The answer is very apparent. The statutes of the Commonwealth touching the descent of real estate, were intended to apply to citizens, and not to aliens, unless they were particularly named. For example, by the statute of 1783, *c.* 36, § 4, it is provided that the widow of the deceased shall in all cases be entitled to her dower in the real estate of her husband. Now that provision was intended to apply to widows who were citizens of the Commonwealth, and not to alien women who were widows. And the statute of 1812, *c.* 93, § 1, was made in favor of the latter class of widows. And it provides, " that the widow of any citizen of the United States who may have been or who shall be an alien at the time of intermarriage with such citizen, shall be entitled to dower in her husband's estate, in this Commonwealth, in the same manner as those who are now by law entitled to dower." The Revised Stat. *c.* 60, § 14, provides that the alienage of a woman shall not bar her right of dower, excepting as to land conveyed by her husband, or taken from him by execution, before the 23d of February, 1813 ; which was the date of the statute of 1812, *c.* 93, before cited.

But there has not been any corresponding provision in favor

of the alien husband, who should have had issue by and wno survived his wife, that he should be tenant by the curtesy, in the same manner as those who by law are entitled to be ten ants by the curtesy.

And it was further argued for the tenant, that as the statute of 1805, c. 90, § 4, provided that alienage should be no imped ment in the distribution of personal estate, but that the provision was not to extend to the descent of any real estate to an alien, and as the Revised Statutes repealed this last statute, therefore the alienage of the husband did not afterwards constitute any impediment to his taking as tenant by the curtesy after that repealing act, which was passed in February 1836, and before the death of the wife of the tenant.

We think the argument cannot be sustained. In the Revised Stat. c. 64, § 1, the provision of the statute of 1805, c. 90, § 4, was reënacted so far as that "alienage in any person, claiming a distributive share of personal estate, should be no impediment to his receiving the same share that he would have been entitled to, if he had been a citizen;" — but the clause in the 4th section of the statute of 1805, c. 90, viz. that the provision was not to extend to the descent of any real estate to an alien, was not contained in the Revised Statute last before cited. That negative clause was entirely unnecessary. The positive enactment was confined in its terms to the distribution of *personal* estate, and it could by no reasonable construction have been applied to the distribution of real estate to an alien. And when the statute was revised by the Revised Stat. c. 64, § 1, the negative and more than useless provision was omitted, but the positive enactment was continued, providing that alienage should be no impediment in the distribution of personal estate, and the impediment or disability of alienage as to taking real estate by descent or otherwise, was left as it was at the common law.

But it has been contended for the tenant, that by the making of his declaration of his intent to become a citizen, he had an inchoate right to citizenship in the life of his wife, and as it was completed after her death, it should relate back, so that the disability of alienage should be removed from the time of making and filing his preliminary declara

tion   This argument is answered by the statute of the L nit
ed States, (*c.* 47,) passed on March 26, 1804.   The pro-
vision is, that where an alien shall die after he has made his
preliminary declaration and " before he is actually naturalized,
the widow and the children of such alien shall be considered
as citizens of the United States ; and shall be entitled to all
rights and privileges, as such, upon taking the oaths prescribed
by law."   But it is very clear that the alien himself does not
become a citizen until he is *actually naturalized.*   Until that
time the common law disabilities of alienage continue, except
as they are relaxed in favor of his widow and children by
the statute of the United States, as is above stated.

The result is, that Sarah Crisp (formerly Varney) died
seised of the whole of the demanded premises, that the same
descended to her eight children, viz. to her seven children, the
demandants, by her first husband, Joseph Varney, and to the
other child, Antonio Crisp, by her second husband, the tenant.

The tenant, having been an alien at the death of his wife,
cannot take the estate by the act of the law as a tenant by
the curtesy, and he is to be defaulted ; and the demandants
are entitled to recover seven undivided eighth parts of the
demanded premises, and are to have judgment rendered for
them accordingly.